WANT2SCRAP, LLC,          )
       Plaintiff,         )
                     )
   v.                  )     CAUSE NO.: 1:17-CV-443-PRC
                     )
MABEL LARSEN, CREATIVE SCRAP  )
DESIGNS, and MAI LARSEN DESIGNS, )
       Defendants.      )

## OPINION AND ORDER

This matter is before the Court on Defendants' Motion to Dismiss for Lack of Personal Jurisdiction; Alternative Motion to Transfer Pursuant to 28 U.S.C. § 1404(a) [DE 17], filed by Defendants Mabel Larsen, Creative Scrap Designs, and Mai Larsen Designs on January 2, 2018.

## PROCEDURAL BACKGROUND

On October 24, 2017, Plaintiff Want2Scrap, LLC ("Want2Scrap") filed a Complaint in this Court against Defendants Mabel Larsen, Creative Scrap Designs, and Mai Larsen Designs, seeking a declaratory judgment of non-infringement of copyright under the Copyright Act pursuant to 28 U.S.C. §§ 2201 and 2202. Want2Scrap also asserts claims of breach of contract, copyright infringement, tortious interference with business relations, unfair competition, inducing copyright infringement, and defamation. Want2Scrap attached to the Complaint as exhibits a Copyright License Agreement, a Nondisclosure Agreement, an August 22, 2017 cease-and-desist letter from counsel for Mabel Larsen to Want2Scrap, and a September 5, 2017 response letter from counsel for Want2Scrap to counsel for Larsen. (ECF 1, Exs. A-D).

On January 2, 2018, Defendant Mabel Larsen filed the instant Motion to Dismiss, attaching in support her own affidavit with exhibits and an affidavit of Susan Brown. (ECF 17, Exs. A, B).

Larsen represents that she is a sole proprietor using the trade names Creative Scrap Designs and Mai Larsen Designs. Thus, the Court treats Larsen as the sole defendant for purposes of this motion.

Want2Scrap filed a response to the instant Motion to Dismiss or Transfer Venue on January 16, 2018, attaching as exhibits the affidavit of Michele Parrish with exhibits and an "Affidavit of Due Diligence" by Ben Davalia, Jr. (ECF 21, Exs. A, B).

Larsen filed a reply in support of the instant motion on January 23, 2018.

## RULE 12(B)(2) LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(2) allows a defendant to move for dismissal for lack of personal jurisdiction. Fed. R. Civ. P. 12(b)(2). The plaintiff bears the burden of establishing the existence of personal jurisdiction when challenged by a defendant. *Jennings v. AC Hydraulic A/S*, 383 F.3d 546, 548 (7th Cir. 2004). When the Court rules on a defendant's motion to dismiss based on the written materials submitted without holding an evidentiary hearing, the plaintiff "need only make out a prima facie case of personal jurisdiction." *N. Grain Mktg., LLC v. Greving*, 743 F.3d 487, 491 (7th Cir. 2014) (internal quotation marks omitted) (quoting *Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003) (quoting *Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 713 (7th Cir. 2002))). The Court may consider the affidavits of both parties. *Felland v. Clifton*, 682 F.3d 665, 672 (7th Cir. 2012). And, when a defendant challenges an allegation in the complaint by affidavit, the plaintiff must go beyond the pleadings and submit affirmative evidence supporting the exercise of jurisdiction. *Purdue Research Found.*, 338 F.3d at 783. All factual disputes are resolved in the plaintiff's favor. *N. Grain Mktg.*, 743 F.3d at 491.

## FACTUAL BACKGROUND

The following facts are taken from the Complaint, Mabel Larsen's Affidavit, and Michele Parrish's Affidavit and are construed in accordance with the Rule 12(b)(2) standard set out above.

Plaintiff Want2Scrap LLC, which designs, manufactures, and imports product for the craft industry, is a limited liability company with its principal place of business in Churubusco, Indiana. (ECF 1, ¶ 2); (ECF 21-1, ¶ 2). Michele Parrish, the owner of Want2Scrap LLC, resides in Churubusco, Indiana. (ECF 21-1, ¶ 2). Defendant Mabel Larsen is a resident of New Braunfels, Texas. (ECF 1, ¶ 3).

In 2013, Larsen was contacted by Allie Gower, who identified herself as the Social Media Coordinator for Want2Scrap. (ECF 17-1, ¶ 4). Gower asked Larsen to appear as a guest designer for a promotional video. *Id*. Later in 2013, Larsen met Parrish at a trade show in Salt Lake City, Utah. *Id*. Also in 2013, Larsen was contacted by Robert Prince, who asked Larsen to be part of Want2Scrap's design team. *Id*. Larsen attempted to create designs for Want2Scrap but was attacked on social media by another Want2Scrap designer, which caused Larsen to cease further contact with Parrish and Want2Scrap. *Id*.

In 2014, Larsen purchased chipboard album materials online from Want2Scrap at wholesale for Larsen's resale. (ECF 17-1, ¶ 5). Larsen had no further contact with Want2Scrap until November 2016, when Larsen contacted Want2Scrap to ask for the donation of a gift certificate in connection with a holiday promotion put together by Larsen and fifteen other crafters on YouTube. *Id*. Want2Scrap contributed a gift certificate and received promotional credit in the presentation. *Id*.

In 2016, Parrish and Larsen had a few phone conversations about the possibility of Larsen promoting Want2Scrap products on various social media platforms. (ECF 21-1, ¶ 3). In November

2016, Larsen contacted Parrish via Parrish's personal Facebook account regarding the opportunity to promote Want2Scrap products. *Id*.; (ECF 21-2, p. 1).

In December 2016, Parrish and Larsen entered into an oral agreement that Parrish would pay Larsen $350.00 per month for the development of a social media presence and YouTube exposure for Want2Scrap. (ECF 17-1, ¶ 9); (ECF 21-1, ¶ 6). The same month, Larsen began promoting Want2Scrap on the Want2Scrap Facebook page, the Want2Scrap Twitter account, and the Want2Scrap Create & Share group on Facebook. (ECF 21-1, ¶ 4). With Parrish's approval, Larsen created the Want2Scrap Create & Share group and a new Want2Scrap YouTube channel. *Id*.

In December 2016, Larsen also began submitting her own product designs to Want2Scrap. (ECF 21-1, ¶ 5). On January 24, 2017, Robert Prince, who was identified to Larsen as an administrative assistant to Parrish, emailed two documents to Larsen—a Copyright License Agreement and a Nondisclosure Agreement. (ECF 17-1, ¶ 7); (ECF 21-1, ¶ 5; 21-2, A-4). Prince's personal mailing address was in Missouri. (ECF 17-1, ¶ 7). Prince's January 24, 2017 email was from a "want2scrap.com" email address, and his signature block in the email included the Want2Scrap LLC business name and mailing address in Churubusco, Indiana. (ECF 21-1, ¶ 5; 21-2, A-4). Prince insisted that the signed signature pages of the two documents be "returned to Want2Scrap." (ECF 17-1, ¶ 7). Larsen emailed the documents back to Prince on January 31, 2017. (ECF 211, ¶ 5; 21-2, A-5). Larsen also sent the signed originals by mail, although the parties do not specify the mailing address. (ECF 17-1, ¶ 7); (ECF 21-1, ¶ 5; 21-2, A-5).

The Copyright License Agreement provides that Want2Scrap was granted an exclusive, transferable license in artwork ("Works") submitted by Larsen in the course of Want2Scrap's

business. *See* (ECF 1, Ex. A). The Nondisclosure Agreement governs the protection of proprietary information disclosed by either Want2Scrap or Larsen. (ECF 1, Ex. B).

The Copyright License Agreement provides that it "shall commence as of the Effective Date" and the "Effective Date" is defined as "the first date on which it has been duly executed by all of the signatories identified below." (ECF 1, Ex. A, ¶¶ 3, 6). The signatories on the Copyright License Agreement are preprinted as "Mai Larsen" for "Mai Larsen Designs" and "Michele Parrish" for "Want2Scrap, LLC." (ECF 1, Ex. A, p. 4).

Both the Copyright License Agreement and the Nondisclosure Agreement were signed by Larsen on January 30, 2017. However, neither agreement was signed by Michele Parrish or anyone else on behalf of Want2Scrap. (ECF 1, Exs. A, B).

The Copyright License Agreement does not contain a forum selection clause. (ECF 1, Ex. A). The Nondisclosure Agreement contains the following forum selection clause:

> This Agreement, including all matters of construction, validity, and performance, shall be governed by and construed and enforced in accordance with the laws of the State of Indiana without regards to its conflict of law rules. The parties here to agree that the exclusive jurisdiction and venue for any action *brought between the Parties under this agreement* shall be the state and federal courts sitting in Indiana, and each of the parties hereby agrees and submits itself to the exclusive jurisdiction and venue of such courts for such purpose.

(ECF 1-4, ¶ 7) (emphasis added).

Over a six-month period from December 8, 2016, to May 21, 2017, Larsen submitted approximately 156 Works to Want2Scrap, with 49 of the Works submitted prior to January 30, 2017. Regarding compensation for the designs, Parrish told Larsen that Parrish would pay Larsen $5.00 for every kit that she sold, in addition to the $350.00 per month for the social media presence. *Id*.

This totaled $50.00 to $100.00 more per month for kits that Larsen designed. *Id*. Larsen declined the extra payments, but Parrish paid the extra money to Larsen anyway. *Id*.

Parrish states that Larsen submitted all, or a substantial majority, of her designs by email to Parrish, who lives in Churubusco, Indiana. (ECF 21-1, ¶ 7). Parrish explained to Larsen that all designs must initially be approved by Parrish and that Larsen was to email all designs to both Parrish and Prince so that they were both "in the loop." (ECF 21-1, ¶ 7). Larsen's designs were often rough sketches or ideas that required significant additional design, development, and layout work by Prince following Parrish's approval. (ECF 21-1, ¶ 7). Prince worked for Want2Scrap remotely from locations such as Missouri, communicating with Parrish by email, Facebook Messenger, and telephone. (ECF 21-1, ¶ 8). Larsen followed the submission process for all, or a substantial majority, of her submitted designs. *Id*. Larsen also frequently submitted designs to Parrish through Facebook Messenger, which meant those designs were submitted to Parrish twice. *Id*. (Ex. A-10, 1-22). Larsen would email unsolicited business ideas for Want2Scrap to Parrish. (ECF 21-1, ¶ 9); (Ex. A-11).

Larsen states that none of Larsen's designs were submitted to Want2Scrap in Indiana but rather to Prince, who had a mailing address in Missouri, and that Parrish instructed Larsen to submit designs to Prince. (ECF 17-1, ¶ 7). The emails submitted as Exhibit A-9 to Parrish's Affidavit are "from" Larsen "to" both Parrish and Prince at each of their "want2scrap.com" email addresses. (Ex. A-9). However, within the body of the emails, the text is addressed to Robert; none of the emails specifically addresses Parrish within the text. *Id*. In contrast, Exhibit A-10 includes Facebook Messenger messages from Larsen to Parrish that contain designs and that indicate Larsen will forward the designs to Prince. (ECF 21-2, A-10).

In March 2017, Larsen determined that she was not being sufficiently compensated for her incurred expenses related to the social media development and notified Parrish that she could not afford to continue with the social media development. (ECF 17-1, ¶ 9). As a result, the December 2016 oral agreement regarding social media development ended. *Id*.

In May 2017, Larsen sent an email to Parrish concerning a prospective customer from Iceland who indicated interest in carrying Want2Scrap products in his shop. (ECF 21-1, ¶ 10).

On June 21, 2017, Larsen notified Parrish that she would no longer submit designs to Want2Scrap and that Larsen intended to open her own shop. (ECF 17-1, ¶ 10); (ECF 21-1, ¶ 11). As a result, Parrish changed the names of several of Larsen's designs on the Want2Scrap website because Parrish did not like some of the names Larsen had chosen. (ECF 21-1, ¶ 11). Parrish also removed Larsen's name as a designer of those designs on the Want2Scrap website. *Id*. Parrish states that she has over 2900 items on the Want2Scrap website and that she does not keep the designer's names on the products. *Id*. In July 2017, Larsen was alerted by customers and people who follow Larsen's YouTube channel that Parrish had removed Larsen's name from the designs at Want2Scrap but that Want2Scrap continued to advertise and solicit customers for the purchase of those designs. (ECF 17-1, ¶ 10).

On August 22, 2017, Larsen, through counsel, sent Want2Scrap a letter demanding that Want2Scrap "immediately cease and desist from the use and violation of Ms. Larsen's intellectual property in all Mai Larsen designs submitted to you or previously used by you in violation of Ms. Larsen's common law copyright rights and associated intellectual property rights." (ECF 1, ¶ 21; Ex. C). The letter further demanded that "funds in the amount of $72,654.33 must be received by

[Larsen] at the address above within fifteen (15) calendar days in order to avoid further legal action including accrued interest and additional attorney fees." (ECF 1, Ex. C).

Want2Scrap then discovered that Larsen was selling, advertising, and distributing Works (or designs that are substantially similar to Works) submitted to Want2Scrap without Want2Scrap's license, permission, or consent and that Larsen continues to do so. (ECF 1, ¶ 23). On September 5, 2017, Want2Scrap, through counsel, denied Larsen's demands in writing and notified Larsen of Larsen's alleged violations of the Copyright License Agreement. (ECF 1, ¶ 25; Ex. D); (ECF 21-1, ¶ 12). Larsen has not formally responded to the September 5, 2017 letter. (ECF 1, ¶ 26).

In the Complaint, Want2Scrap alleges that Larsen is a direct competitor of Want2Scrap in the crafting industry as she is also actively involved in developing products, services, and inventions relating to bling, laser cut designs, paper crafts, die cutting, and paper cutting. (ECF 1, ¶ 28). Want2Scrap alleges that Larsen infringed Want2Scrap's exclusive rights in the "Suitcase Kit-Want2Scrap Kit" design, which had been submitted by Larsen to Want2Scrap under the Copyright License Agreement on March 7, April 21, April 30, and May 1, 2017, by causing to be published on Larsen's YouTube channel a video entitled "Shabby Chic Suitcase Tutorial." (ECF 1, ¶¶ 29-34).

Parrish states that it was brought to her attention several times in September and October 2017 that Larsen was streaming two-to-three-hour-long live videos on Facebook and YouTube "bashing" Parrish "and her business." (ECF 21-1, ¶ 13). The Complaint alleges that, on each of September 8, October 18, and October 22, 2017, Larsen caused to be published on Larsen's YouTube channel a video in which Larsen made allegedly false statements about Want2Scrap that were harmful to the interests of Want2Scrap in the way of its trade and with the intent that the publication of the statements would cause undue harm to the interests of Want2Scrap. (ECF 1, ¶¶

36-41). Parrish describes the videos as hateful, threatening, and absolutely horrible to watch. (ECF 21-1, ¶ 13).

In her Affidavit, Mabel Larsen avers that she has never physically been in the State of Indiana; has not caused any personal injury or property damage by any act or omission done within Indiana; has not caused personal injury or property damage in Indiana by the occurrence, act, or omission outside of Indiana; does not regularly do or solicit business or engage in any other course of conduct in Indiana; does not derive any revenue or benefit from goods or materials or services used, consumed, or rendered in Indiana, has not supplied or contracted to supply services rendered or to be rendered or goods or materials furnished or to be furnished in Indiana, has never owned, used, or possessed any real property or an interest in real property in Indiana, and has never contracted to insure or act as a surety for or on behalf of any person, kind of property, or a risk in Indiana. (ECF 17-1, ¶ 3).

Parrish states in her Affidavit that Want2Scrap has suffered actual injury because Larsen infringed on the copyrights in the designs in which Want2Scrap has an exclusive license. (ECF 21-1, ¶ 14).[1] Parrish represents that the crafting industry is a small, tight-knit community and that prior customers have commented online and offline about Larsen's videos, often believing the false statements that Larsen was asserting and stating that they would no longer do business with Want2Scrap based on Larsen's statements. *Id.* Parrish explains that the timing of Larsen's videos seemed directly intended to have the greatest possible negative impact on Want2Scrap's sales during the holiday retail period. *Id.*

---

[1] Michele Parrish is not a plaintiff in the instant litigation. Therefore, statements in her Affidavit regarding the alleged financial and emotional effect of Larsen's actions on Parrish personally, as opposed to on Plaintiff Want2Scrap, LLC, are not relevant to the instant jurisdictional analysis. *See* (ECF 21-1, ¶ 14).

On October 24, 2017, Want2Scrap filed the instant lawsuit in this Court.

On October 25, 2017, Larsen filed suit in the United States District Court for the Western District of Texas, seeking damages for Want2Scrap's infringement of her copyrighted intellectual property. (ECF 17, p. 2). On November 20, 2017, Parrish and Want2Scrap appeared in the Texas action to file a motion to dismiss or transfer venue. *Id*.

## ANALYSIS

Defendant Mabel Larsen seeks dismissal of this action pursuant to Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction. In the alternative, Larsen seeks transfer of this action to the United States District Court for the Western District of Texas pursuant to 28 U.S.C. § 1404(a).

### A. Personal Jurisdiction

A federal district court may exercise personal jurisdiction over a defendant if a court of general jurisdiction of the state in which it sits would have such jurisdiction or when authorized by a federal statute. Fed. R. Civ. P. 4(k)(1)(A); *Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 800 (7th Cir. 2014); *N. Grain Mktg.*, 743 F.3d at 492. When, as here, the case is brought under the court's federal question jurisdiction but the federal statutes at issue, the Copyright Act and Declaratory Judgment Act in this instance, do not have a special rule for personal jurisdiction, the court looks to the law of the forum state. *Advanced Tactical*, 751 F.3d at 800 (recognizing that the Declaratory Judgment Act does not supply a basis for acquiring personal jurisdiction (citing *Tamburo v. Dworkin*, 601 F.3d 693, 701 n. 6 (7th Cir. 2010))); *Janmark, Inc. v. Reidy*, 132 F.3d 1200, 1201 (7th Cir. 1997) (recognizing that the Copyright Act does not authorize nationwide service), abrogate on other grounds by *Advanced Tactical*, 751 F.3d at 802.

The Indiana Rules of Trial Procedure provide for personal jurisdiction "on any basis not inconsistent with the Constitution of this state or the United States." Ind. Tr. R. 4.4(A). Thus, Indiana permits the exercise of personal jurisdiction to the full extent permitted by the Due Process clause of the United States Constitution. *See Advanced Tactical*, 751 F.3d at 800 (citing *LinkAmerica Corp. v. Albert*, 857 N.E.2d 961, 967 (Ind. 2006)); *see also Walden v. Fiore*, — U.S. —, —, 134 S. Ct. 1115, 1121 (2014); *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 464 (1985).

Under that standard, the defendant must have "certain minimum contacts with [Indiana] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1946) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)); *see also Walden*, 134 S. Ct. at 1119. Based on the "defendant's conduct and connection with the forum state," the defendant "should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). Personal jurisdiction is categorized as either general or specific. *Daimler AG v. Bauman*, 571 U.S. 117, 134 S. Ct. 746, 754-56 (2014).

A defendant is subject to a court's general jurisdiction when the defendant has "continuous and systematic" contacts with the forum state. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 415-16 (1984); *see also Daimler AG*, 134 S. Ct. at 754; *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). A defendant subject to a state's general jurisdiction may be haled into court in that state "for any alleged wrong . . . no matter how unrelated to the defendant's contacts with the forum." *uBID, Inc. v. GoDaddy Grp., Inc.*, 623 F.3d 421, 426 (7th Cir. 2010). "'For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile . . . .'" *Bristol-Myers Squibb Co. v. Super. Ct. of Cal.*, 137 S. Ct. 1773,

1780 (2017) (quoting *Goodyear*, 564 U.S. at 924). Larsen does not live or work in the State of Indiana, and Want2Scrap does not assert any facts to make a prima facie case that Larsen has continuous and systematic contacts with the State of Indiana.[2]

Rather, Want2Scrap argues that Larsen is subject to the Court's specific jurisdiction, which requires that the lawsuit "aris[e] out of or relat[e] to the defendant's contacts with the forum." *Bristol-Myers Squibb*, 137 S. Ct. at 1780 (quoting *Daimler*, 134 S. Ct. at 754); *see also Walden*, 134 S. Ct. at 1121; *Advanced Tactical*, 751 F.3d at 801; *uBID*, 623 F.3d at 426. "In other words, there must be 'an affiliation between the forum and the underlying controversy, principally [an] activity or an occurrence that takes place in the forum state and is therefore subject to the State's regulation.'" *Bristol-Myers Squibb*, 137 S. Ct. at 1781 (quoting *Goodyear*, 564 U.S. at 919). The relevant contacts are those that center on the relationship among the defendant, the forum, and the litigation. *Advanced Tactical*, 741 F.3d at 801 (citing *Walden*, 134 S. Ct. at 1119).

In *Walden*, the United States Supreme Court held that, "[f]or a state to exercise jurisdiction consistent with due process, the defendant's *suit-related* conduct must create a *substantial connection* with the forum state." 134 S. Ct. at 1121 (emphasis added). "First, the relationship must arise out of contacts that the 'defendant [*herself*]' creates with the forum state." *Walden*, 134 S. Ct. at 1122 (quoting *Burger King*, 471 U.S. at 475). A plaintiff's contacts with the forum cannot be "'decisive in determining whether the defendant's due process rights are violated.'" *Id.* (quoting *Rush v. Savchuk*, 444 U.S. 320, 332 (1980)). Second, the minimum contacts analysis is based on "the

---

[2] In its brief, Want2Scrap asserts: "Want2Scrap's residence in Indiana is a 'continuous and systematic' presence in the state, directly the opposite of the kind of 'unilateral' activity required to attenuate jurisdiction." (ECF 21, p. 9) (emphasis added) (quoting *Helicopteros*, 466 U.S. at 415-16). However, the analysis of a "continuous and systematic presence" goes to the defendant's contacts with the forum, not the plaintiff's. *See Helicopteros*, 466 U.S. at 415-16; *uBid, Inc. v. GoDaddy Grp., Inc.*, 623 F.3d 421, 425-26 (7th Cir. 2010).

defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." *Id*. Said differently, "the plaintiff cannot be the only link between the defendant and the forum. Rather, it is the defendant's conduct that must form the necessary connection with the forum State that is the basis for its jurisdiction over [her]." *Id*. at 1122-23 (citing *Burger King*, 471 U.S. at 478; *Kulko v. Superior Court of Cal., City and Cty. of San Francisco*, 436 U.S. 84, 93 (1978)); *see also Advanced Tactical*, 751 F.3d at 802.

In this case, Want2Scrap first asserts that the forum selection clause in the Nondisclosure Agreement supports specific jurisdiction over Larsen in Indiana. Indeed, if a forum selection clause is valid and enforceable, challenges to personal jurisdiction are waived. *See FinishMaster, Inc. v. Walker*, No. 1:16-CV-2302, 2017 WL 7370984, at *3 (S.D. Ind. Sept. 19, 2017) (citing cases). However, the validity and enforceability of a forum selection clause are non-issues if the substantive legal dispute in the litigation does not arise out of the agreement containing the forum selection clause, as in this case. *See United Airlines, Inc. v. Zaman*, 152 F. Supp. 3d 1041, 1051 (N.D. Ill. 2015) (finding that the forum selection clause in an "Affiliate Agreement" was not a relevant contact with Illinois for purposes of personal jurisdiction because the agreement did not bear on the substantive legal dispute in the case); *Payne v. N. Tool & Equip. Co., Inc.*, No. 2:13-CV-109, 2013 WL 6019299, at *3-4 (N.D. Ind. Nov. 12, 2013) (recognizing that only the claims arising under or in connection with the agreement were subject to the agreement's forum selection clause).

The Nondisclosure Agreement's forum selection clause applies to "any action brought between the Parties *under this agreement*," meaning an action brought under the Nondisclosure Agreement. (ECF 1-4, ¶ 7) (emphasis added). Want2Scrap's Complaint does not allege a breach of the Nondisclosure Agreement, and Want2Scrap does not argue that it is alleging a breach of the

Nondisclosure Agreement. The Copyright License Agreement is at issue in this litigation. Neither the Copyright License Agreement nor the Nondisclosure Agreement references the other. Want2Scrap does not argue that the Nondisclosure Agreement was incorporated into the Copyright License Agreement. Notably, Want2Scrap's Complaint does not allege personal jurisdiction based on the Nondisclosure Agreement but rather alleges that Larsen purposefully directed her activities toward the residents of Indiana and otherwise purposefully availed herself of the privileges of conducting business in the State of Indiana, invoking the benefits and protections of its laws. *See* (ECF 1, ¶ 10). The forum selection clause in the Nondisclosure Agreement is not relevant and does not provide a basis for this Court to assert personal jurisdiction over Larsen in this litigation.

Thus, the Court turns to the question of whether Larsen has minimum contacts with Indiana sufficient to subject her to the Court's specific jurisdiction. Want2Scrap advances the following facts to demonstrate sufficient minimum contacts: Larsen engaged Want2Scrap to promote Want2Scrap products, Larsen submitted product designs to Want2Scrap for market and continued to enrich herself through continued dealings with Want2Scrap through the internet, Larsen was repeatedly paid for her contribution to Want2Scrap's nationwide sales, Larsen knew that Want2Scrap was located in Indiana and committed acts of infringement against Want2Scrap, and Larsen defamed Want2Scrap, which is located in Indiana.

All of a defendant's contacts with a state cannot simply be aggregated as evidence of the constitutionally-required minimum contacts. *RAR, Inc. v. Turner Diesel, Ltd.*, 107 F.3d 1272, 1277-78 (7th Cir. 1997) (finding insufficient minimum contacts and rejecting the plaintiff's proposal of a "loose causal connection" between the lawsuit and the defendant's forum contacts based on the defendant's repeated contacts with the plaintiff over two years as part of a long-term commercial

relationship, which the court described as a "hybrid between specific and general jurisdiction where, though *all* of a defendant's forum contacts would not be relevant for minimum contacts, all of a defendant's contacts *with a specific plaintiff* would be" and which the court found does not comport with fair play and substantial justice). Nor is a finding of specific jurisdiction appropriate merely because a plaintiff's cause of action arose out of a general relationship between the parties. *Id.* at 1278 (quoting *Sawtelle v. Farrell*, 70 F.3d 1381, 1390 (1st Cir. 1995)). The minimum contacts analysis depends largely on the types of claims at issue. *Felland*, 682 F.3d 674; *Commissioning Agents, Inc. v. Long*, 143 F. Supp. 3d 775, 788 (S.D. Ind. 2015) (citing *Tamburo*, 601 F.3d at 702; *Felland*, 682 F.3d at 674); *Monster Energy Co. v. Wensheng*, 136 F. Supp. 3d 897, 903 (N.D. Ill. Sept. 29, 2015) (quoting *Felland*, 682 F.3d 674).

In this case, Want2Scrap's claims do not each arise out of the same set of facts but rather can be split into four groupings—declaratory judgment under the Copyright Act, breach of contract, intentional torts of copyright infringement and interference with business relations, and defamation. *See Commissioning Agents*, 143 F. Supp. 3d at 787. The Court finds that Want2Scrap has not met its burden of demonstrating sufficient minimum contacts for personal jurisdiction over Larsen for any of the claims because Larsen's only connection to Indiana is through Plaintiff Want2Scrap and Want2Scrap's residence in Indiana.

In Count I, Want2Scrap seeks a declaratory judgment that Larsen's alleged copyrights in the Works were not timely registered and, therefore, Larsen is not entitled to a claim of statutory damages or an award of attorney fees for those particular copyrights under the Copyright Act. (ECF 1, ¶¶ 48-55). The contacts relevant to personal jurisdiction for a claim of declaratory judgment of non-infringement are based on the defendant's conduct that gives rise to the plaintiff's claim,

specifically the defendant's enforcement activity, *not* its business activity. *See Am. Intercont'l Univ., Inc. v. Am. Univ.*, No. 16 C 10669, 2017 WL 3478805, at *3-4 (N.D. Ill. Aug. 14, 2017) (recognizing, on a claim for declaratory judgment of non-infringement of a trademark, that the Seventh Circuit Court of Appeals has not addressed the issue but relying on the decision addressing non-infringement of a patent in *Avocent Huntsville Corp. v. Aten Int'l Co.*, 552 F.3d 1324 (Fed. Cir. 2008), that the relevant contacts are the defendant's enforcement activity, not its business activity). In the context of a patent, a declaratory judgment claim for non-infringement "'neither directly arises out of nor relates to the making, using, offering to sell, selling, or importing arguably infringing products in the forum, but instead arises out of or relates to the activities of the defendant patentee in *enforcing* the patent or patents in suit.'" *Am. Univ.*, 2017 WL 3478805, at *3 (emphasis added) (quoting *Avocent*, 552 F.3d at 1332). Just as the court in *American University* found this reasoning applicable to a declaratory judgment for non-infringement of a trademark, this Court finds the reasoning applicable to a declaratory judgment for non-infringement of a copyright. *See id.* at *4 (adopting *Avocent* in the context of a declaratory judgment for non-infringement of a trademark) (citing cases).

Thus, the relevant question is to what extent Larsen purposefully directed efforts to enforce her copyright protections at Indiana and its residents. *Am. Univ.*, 2017 WL 3478805, at *4. Want2Scrap's declaratory judgment claim is based on Larsen's assertion in the August 2017 cease-and-desist letter that Want2Scrap infringed on at least the Works listed in the letter. This letter is the only evidence of Larsen's effort to enforce her copyright protections. Although the letter was mailed to Want2Scrap in Churubusco, Indiana, by Larsen's attorney in Texas, the letter alone is an insufficient contact for personal jurisdiction over Larsen on this claim. *See* (ECF 1-5, Ex. C). "Under

federal law, '[t]he sending of infringement letters has been uniformly held insufficient by itself to satisfy the minimum contacts requirement.'" *Kroto v. Chapa*, No. 17 C 1218, 2017 WL 2692122, at *2 (N.D. Ill. June 22, 2017) (declaratory judgment for non-infringement of a copyright) (quoting *Classic Golf Co. v. Karsten Mfg. Co.*, No. 86 C 906, 1986 WL 8953, at *1 (N.D. Ill. Aug. 8, 1986) (declaratory judgment for non-infringement of a patent) (citing cases)); *see also Riders Choice, LLC v. Heckaman*, No. 2:13-CV-260, 2014 WL 1571225 (S.D. Ind. Apr. 17, 2014) (finding, in a case seeking a declaratory judgment for non-infringement of a copyright and in which the Texas defendant had sent two cease-and-desist letters to the plaintiff in Indiana, that the defendant's prior business contacts with Indiana were unrelated to the declaratory judgment action and that the court did not have specific personal jurisdiction over the Texas defendant).[3]

In the context of patent law, the Federal Circuit held that "ordinary cease-and-desist notices sent by a patentee to an alleged infringing party in a different state are not sufficient to subject the patentee to specific jurisdiction in that state." *Radio Sys. Corp. v. Accession, Inc.*, 638 F.3d 785, 789 (Fed. Cir. 2011) (citing *Red Wing Shoe Co. v. Hockerson-Halberstadt, Inc.*, 148 F.3d 1355 (Fed. Cir. 1998)). The court in *Radio Systems* rejected the plaintiff's argument that the defendant's prior business dealings with plaintiff in the forum state were relevant contacts for personal jurisdiction in the declaratory judgment action and held that the defendant's attorney's cease-and-desist

---

[3] In contrast, in *American Medical Association v. 3Lions Publishing, Inc.*, No. 14 C 5280, 2015 WL 1399038, at *3 (N.D. Ill. Mar. 25, 2015), in which the plaintiff brought a claim for non-infringement of copyright, the court found that two letters from defendant threatening imminent litigation if the demands were not met were sufficient to confer personal jurisdiction over the Florida defendant in Illinois. The court reasoned that "a single letter can provide the basis for specific jurisdiction when the litigation arises out of the letter," citing *Felland v. Clifton*, 682 F.3d 665, 669 (7th Cir. 2012). *Id.* at *3. However, *Felland* was not a declaratory judgment action for non-infringement of intellectual property but rather a case alleging claims of rescission of contract and damages based on a series of intentional misrepresentations related to the financing of a real estate project. *See Felland*, 682 F.3d 665. And, the court in *3Lions* did not discuss the cases finding that cease-and-desist letters in declaratory judgment actions for non-infringement of intellectual property are insufficient minimum contacts for personal jurisdiction. As a result, *3Lions Publishing* is not persuasive.

correspondence sent to plaintiff in the forum were insufficient minimum contacts. *Id.* at 789-90 (relying on *Avocent*, 552 F.3d at 1332; citing *Autogenomics, Inc. v. Oxford Gene Tech. Ltd.*, 566 F.3d 1012, 1020 (Fed. Cir. 2009)). Similarly, until Larsen's attorney sent the initial cease and desist letter in August 2017, there is no evidence of any contact between the parties that directly bore on the infringement of Larsen's intellectual property. The Court finds that Larsen's August 2017 cease-and-desist letter, as the only Indiana conduct relevant to the declaratory judgment claim, is an insufficient contact to confer personal jurisdiction over Larsen in Indiana for Want2Scrap's declaratory judgment claim for non-infringement under the Copyright Act.

In Count II, Want2Scrap brings a breach of contract claim, alleging that Larsen breached the Copyright License Agreement by advertising, selling, or distributing works substantially similar to the Works, without Want2Scrap's license, permission, or consent and without paying Want2Scrap for use of the Licensed Works. (ECF 1, ¶¶ 56-59). In contract disputes, "'contracting with an out-of-state party alone cannot establish automatically sufficient minimum contacts in the other party's home forum.'" *N. Grain Mktg.*, 743 F.3d at 493 (quoting *Purdue Research Found.*, 338 F.3d at 781 (citing *Burger King*, 471 U.S. at 478)); *see also Johnson v. Hartwell*, 690 F. App'x 412, 413 (7th Cir. 2017) ("But by itself a contract with a forum-state party does not automatically establish personal jurisdiction in the forum."). Thus, the fact that Larsen contracted with Want2Scrap, an Indiana party, is insufficient by itself to establish personal jurisdiction over Larsen.

Instead, a context-sensitive analysis looks at "'prior negotiations, contemplated future consequences, the terms of the contract, and the parties' course of actual dealing with each other.'" *N. Grain Mktg.*, 743 F.3d at 493 (quoting *Purdue Research Found.*, 338 F.3d at 781 (citing *Burger King*, 471 U.S. at 478)); *Johnson*, 690 F. App'x at 413. In this case, none of these factors point to

Indiana. The parties' negotiations were all online by email and Facebook Messenger. The terms of the contract do not implicate Indiana. The parties' course of actual dealing with each other occurred online, with no specific actions implicating Indiana. *See, e.g.*, *N. Grain Mktg.*, 743 F.3d at 495. Larsen's one isolated purchase from Want2Scrap in 2014 is unrelated both to this litigation and the breach of contract claim.

Want2Scrap argues that Larsen knew that Want2Scrap was located in Indiana and that Want2Scrap repeatedly paid Larsen for her contributions to Want2Scrap's nationwide sales. However, given the nation-wide, internet-based nature of Want2Scrap's business and the email nature of Larsen and Parrish's communications, Want2Scrap's location and payments to Larsen in relation to the contract were only a random or fortuitous connection to Indiana. *Johnson*, 690 F. App'x at 413-14; *see also Advanced Tactical*, 751 F.3d at 803. In *Johnson*, the Indiana plaintiff received correspondence in Indiana from the Michigan defendants related to the parties' contract, and the Indiana plaintiff paid rent to the Michigan defendants from Indiana. *Id*. The Seventh Circuit Court of Appeals found that the plaintiff's location in Indiana was incidental to the contract and that nothing about Indiana bore on the transaction for purposes of personal jurisdiction. *Id*. The court explained that "[t]he contract here established only a 'random' or 'fortuitous' connection with Indiana that was not sufficient to establish personal jurisdiction there." *Id*. at 414 (quoting *Walden*, 134 S. Ct. at 1123); *see also Commissioning Agents*, 143 F. Supp. 3d at 788-89 (noting that, in an employer-employee context, a "defendant-employee's human resources connections with the forum state are insufficient to establish personal jurisdiction," including salary payments made from forum-state bank accounts (citing *Protective Ins. Co. v. Cody*, 882 F. Supp. 782, 786-87 (S.D. Ind. 1995) (quoting *Dehmlow v. Austin Fireworks*, 963 F.2d 941, 946 (7th Cir. 1992)); *Advanced Aerofoil*

*Techs., Inc. v. Todaro*, No. 11-CV-7866, 2011 WL 6009616, at *4-5 (N.D. Ill. Nov. 30, 2011))).

Similarly, in *Forret v. Davis*, also a breach of contract action, the court found that the Minnesota defendant lacked the requisite minimum contacts with Wisconsin because the relevant contacts were extremely limited and those initiated by the defendant himself were a few telephone calls and emails with the plaintiff. No. 17-CV-1440, 2017 WL 6501918, at *5 (E.D. Wis. Dec. 19, 2017). Even though the defendant knew that the plaintiff was a Wisconsin resident at the time of contracting, the defendant's only link to the state was through the plaintiff, and the plaintiff's presence in Wisconsin during the telephone and email contacts was nothing more than fortuitous. *Id.* "If Plaintiff had been a resident of Florida, Hawaii, or any state in between, those jurisdictions would have precisely the same connection to this action as does Wisconsin." *Id.*

The contract at issue is the Copyright License Agreement, which the Court presumes is valid for purposes of this motion notwithstanding the lack of evidence that Want2Scrap executed the agreement. Larsen signed the Copyright License Agreement, presumably in Texas, and returned it by email to Prince in Missouri; it is unclear whether the original contract was mailed to Want2Scrap in Indiana or Missouri. Regardless, nothing about Indiana bore on the Copyright License Agreement, as there is no mention of Indiana or any express reliance on Indiana law in the Copyright License Agreement. *See Forret*, 2017 WL 6501918, at *5 (finding, in an analysis of personal jurisdiction that was "buttressed by reference to the nature of [the] action— breach of contract," that nothing about Wisconsin bore on the contracts because they did not mention Wisconsin or express reliance on Wisconsin law (citing *Johnson*, 690 F. App'x 412)).

Want2Scrap correctly cites *Asahi Metal Industry Co., Ltd. v. Superior Court of California, Solano County*, 480 U.S. 102, 112 (1987), for its holding that designing a product for the market in

a forum state or marketing the product through a distributor who has agreed to serve as the sale agent in the forum state demonstrates purposeful availment of the state. (ECF 21, p. 8). Yet, Want2Scrap identifies no facts showing that Larsen did either. Want2Scrap notes that Larsen "submitted product designs to Want2Scrap for market," (ECF 21, p. 9), but Want2Scrap does not allege that the designs were for the *Indiana* market or that Want2Scrap was serving as Larsen's sales agent in Indiana. Want2Scrap is an internet-based business and Want2Scrap has not alleged that Larsen's designs were sold in Indiana, much less targeted at Indiana.

Want2Scrap also argues that Larsen communicated with and submitted her designs to Want2Scrap, which was located in Indiana. The communications and submissions were made by email to both Michele Parrish in Indiana and Robert Prince in Missouri, each of whose presence in the state at the time of Larsen's emails was nothing more than fortuitous, which is underscored by the fact that the submissions were made by email to two different states. Parrish could have been personally located in any state across the country when she received both the designs and the communications from Larsen; nothing about the design submissions or communications was specific to Indiana. These are not "continuing and wide-reaching contacts" with Indiana and, thus, the emails did not create a "substantial connection" between Larsen and Indiana. *See Walden*, 134 S. Ct. at 1122; *see also Zaman*, 152 F. Supp. 3d at 1053 (noting that contact with the plaintiff cannot be the only link between the defendant and the forum and discussing the post-*Walden* decision in *Fastpath, Inc. v. Arbela Techs. Corp.*, 760 F.3d 816 (8th Cir. 2014)).

Finally, Want2Scrap asserts that Larsen "engaged Want2Scrap wanting to promote Want2Scrap products." (ECF 21, p. 9). This conduct is irrelevant to the breach of contract claim, which is unrelated to Larsen's promotion of Want2Scrap products through various online platforms

but rather arises out of Larsen's use of Works allegedly covered by the Copyright License Agreement. *See e.g., MG Design Assocs., Corp. v. Costar Realty Info., Inc.*, 267 F. Supp. 3d 1000, 1017-18 (N.D. Ill. 2017) (finding that, because the defendant's contacts with Illinois did not relate to the count for breach of written contract, the court could not exercise specific jurisdiction over the breach of written contact claim).

On these facts related to the breach of contract claim based on the Copyright License Agreement, Larsen did not purposefully avail herself of the privilege of conducting business in Indiana such that she should have foreseen being haled into court here on the claim. To the extent the breach of contract claim also arises out Larsen's allegedly infringing conduct, those contacts are also insufficient, as discussed in the context of the copyright infringement claim.

In Counts III and VI, Want2Scrap brings claims of copyright infringement and inducing copyright infringement under the Copyright Act, alleging that Larsen, without license, permission, or consent from Want2Scrap, has sold and is selling, distributing, and advertising goods bearing the design that is copied from and/or substantially similar to the Works and has knowingly caused, urged, encouraged, or aided third parties in infringing Want2Scrap's exclusive rights in the Works. (ECF 1, ¶¶ 60-65, 76-79). For intentional torts such as copyright infringement, the jurisdiction where the injury occurred has a heavy presumption of jurisdiction, *Tamburo*, 601F.3d at 703-07 (citing *Calder v. Jones*, 465 U.S. 783, 789 (1984)); however, in *Walden*, which discussed *Calder* at length, the Supreme Court made clear that "the plaintiff cannot be the only link between the defendant and the forum," *Advanced Tactical*, 751 F.3d at 802; *see also Zaman*, 152 F. Supp. 3d at 1053.

Thus, the fact that Want2Scrap is located in Indiana and felt the "effects" of Larsen's alleged infringement in Indiana is insufficient to establish personal jurisdiction over Larsen in Indiana for

these claims without evidence that Larsen directed the infringing activity at Indiana. *See Philpot v. Gray Television, Inc.*, No. 1:14-CV-1977, 2015 WL 1455812, at *5 (S.D. Ind. Mar. 30, 2015) (citing *Advanced Tactical*, 751 F.3d at 801 (7th Cir. 2014)). There is no evidence that any of Larsen's alleged infringing activities occurred in this district. Larsen's allegedly infringing activity was posting the "Shabby Chic Suitcase Tutorial" video on her YouTube channel, presumably from her home in Texas. *See Philpot*, 2015 WL 1455812 at * 5. Want2Scrap argues generally that Larsen targeted works subject to Want2Scrap's exclusive copyright license for infringement. But, there is no allegation or evidence that Larsen sold any of the Works to anyone in Indiana or that anyone in Indiana was specifically targeted by Larsen's online marketing or in her Texas business.

Want2Scrap does not allege that Larsen has an interactive website that makes her products available for purchase to individuals in Indiana. Yet, even if Larsen maintained some kind of interactive website, the Seventh Circuit Court of Appeals has opined that "[h]aving an 'interactive website' . . . should not open a defendant up to personal jurisdiction in every spot on the planet where that interactive website is accessible. To hold otherwise would offend 'traditional notions of fair play and substantial justice.'" *Advanced Tactical*, 751 F.3d at 803 (quoting *Int'l Shoe*, 326 U.S. at 316); *be2 LLC v. Ivanov*, 642 F.3d 555, 558 (7th Cir. 2011) (citing *Illinois v. Hemi Grp., LLC*, 622 F.3d 754, 760 (7th Cir. 2010)); *see also Hemi Grp.*, 622 F.3d at 760 ("Courts should be careful in resolving questions about personal jurisdiction involving online contacts to ensure that a defendant is not haled into court simply because the defendant owns or operates a website that is accessible in the forum state, even if that site is 'interactive.'"); *Bell v. Find Tickets, LLC*, No. 115-CV-973, 2016 WL 1117772, at *3 (S.D. Ind. Mar. 22, 2016) (finding that the defendant's maintenance of an interactive website accessible to Indiana residents that allegedly displayed the copyrighted photo

is insufficient to demonstrate that the defendant exploited the Indiana market (citing *Advanced Tactical*, 751 F.3d at 803; *be2 LLC v. Ivanov*, 642 F.3d at 558)); *Am. Bridal & Prom Indus. Ass'n, Inc. v. The P'ships & Unincorporated Ass'ns Identified on Schedule A*, 192 F. Supp. 3d 924, 932 (N.D. Ill. 2016) (finding that the plaintiff's allegations and purported evidence fell short of establishing specific personal jurisdiction in a trademark suit because the plaintiff showed only that some defendants may have used copyrighted images, did not show that the defendants "specifically offered for sale or sold infringing products to Illinois residents," and did not show that the websites were any more accessible in Illinois than elsewhere in the world); *but see Commissioning Agents*, 143 F. Supp. 3d at 790-92 (collecting and comparing cases in which online activity constituted and did not constitute sufficient minimum contacts); *Monster Energy*, 136 F. Supp. 3d 897 (exercising specific jurisdiction over Chinese sellers of counterfeited merchandise based on offering the merchandise for sale over the internet in Illinois, the directing of the sales to Illinois, and the purchase of such merchandise by individuals in Illinois). Likewise, the fact that residents of Indiana could view Larsen's YouTube channel and videos without any indication that the channel was targeting Indiana is not sufficient to hale Larsen into court in Indiana. *be2 LLC*, 642 F.3d at 558-59 (citing cases).

Count IV and Count V allege claims of tortious interference with business relations and unfair competition. In the Complaint, Want2Scrap alleges that it has contracts or business relationships with third parties who were existing Want2Scrap customers or who had communicated an interest in establishing prospective relationships with Want2Scrap and that some of those third parties have expressed concern for Want2Scrap's reputation as a result of Larsen's misrepresentations. Want2Scrap alleges that Larsen was aware of the contracts and/or prospective

business relations, that the third parties would become aware of Larsen's false and misleading statements about Want2Scrap, and that Larsen knowingly and willfully interfered with Want2Scrap's business relationships. (ECF 1, ¶¶ 66-71). Want2Scrap alleges that Larsen made substantial profits and gains as a result. (ECF 1, ¶¶ 72-75).

Again, Want2Scrap's presence in Indiana and the fact that Want2Scrap felt its injury in Indiana are insufficient for the minimum contacts necessary to obtain specific jurisdiction over Larsen for these intentional torts because the plaintiff cannot be the defendant's only link to the forum. *See MG Design*, 267 F. Supp. 3d at 1018 (citing *Advanced Tactical*, 751 F.3d at 802). Moreover, there is no allegation or evidence that Larsen intentionally affected an Indiana interest. *See MG Design*, 267 F. Supp. 3d at 1019. None of the allegations in the Complaint indicate that any of Larsen's alleged misrepresentations were made to individuals in Indiana or that Larsen intentionally directed the alleged misrepresentations at individuals or businesses in Indiana or interfered with Want2Scrap's relationships with Indiana businesses or customers. *Id.*; *see also Data Research & Handling, Inc. v. Vongphachanh*, No. 1:16-CV-392, 2018 WL 1071980, at *5 (N.D. Ind. Feb. 27, 2018) (finding that the defendant's contacts with Indiana were not constitutionally sufficient in a case alleging, among others, claims of libel, slander, tortious interference with contract, and tortious interference with a business relationship).

Finally, in Count VIII, Want2Scrap alleges a claim of defamation on the basis that Larsen published or caused to be published false statements harmful to the interests of Want2Scrap in the way of its trade and with the intent that the publication of the statement would cause undue harm to Want2Scrap. (ECF 1, ¶¶ 80-83). Want2Scrap relies on *Calder*, 465 U.S. at 790, arguing that, by engaging in public defamation against Indiana resident Want2Scrap and its owner Parrish, Larson

must reasonably anticipate being haled into court in Indiana to answer for the truth of the statements she made online. (ECF 21, p. 7). Want2Scrap does not cite *Walden* or acknowledge *Walden*'s treatment of *Calder*. Again, after *Walden*, which discussed *Calder* at length, "[t]he proper inquiry is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects [her] to the forum in a meaningful way." *Walden*, 134 S. Ct. at 1125 (discussing *Calder*). The Supreme Court in *Walden* held that *Calder* made clear that "mere injury to a forum resident is not a sufficient connection to the forum." *Id.*; *see also Zaman*, 152 F. Supp. 3d at 1049. In *Advanced Tactical*, the court explained that, "after *Walden* there can be no doubt that "the plaintiff cannot be the only link between the defendant and the forum.' Any [prior Seventh Circuit Court of Appeals] decision that implies otherwise can no longer be considered authoritative." 751 F.3d at 802 (quoting *Walden*, 134 S. Ct. at 1122).

Want2Scrap identifies no meaningful connection between Larsen and Indiana in relation to the allegedly defamatory videos. The only connection between Larsen's videos, which appear to have been aired from Texas, and Indiana is Want2Scrap's presence in Indiana. There is no evidence that Larsen targeted Indiana's market. Nothing tethered the effect of Larsen's videos to Indiana in any meaningful way. Want2Scrap has not identified any facts linking the defamation more to Indiana than any other state. Want2Scrap would have experienced the same injury to reputation no matter the state in which Parrish and Want2Scrap resided at the time of Larsen's videos. In contrast with *Calder*, this case does not involve a forum-focused, printed communication. *See Calder*, 465 U.S. 783; *see also Johnson*, 690 F. App'x 412. Larsen did not create the forum contacts with the state. Larsen's statements made over YouTube are geographically neutral. *Zaman*, 152 F. Supp. 3d at 1052 (noting that in *Tamburo*, the tortious statements gave an Illinois address and asked readers

to harass the plaintiff in Illinois). Want2Scrap's Complaint includes quotations of the alleged defamatory statements, and none of them reference Indiana. *See* (ECF 1, ¶¶ 36-41). The majority of the statements relate to Larsen's business interactions with Want2Scrap and Parrish including payment, the allegedly infringing video of the suitcase tutorial, copyrights, and statements about lacking integrity. *Id.*

"[T]he effects of [Larsen's] conduct on respondents are not connected to the forum State in a way that makes those effects a proper basis for jurisdiction." *Walden*, 134 S. Ct. at 1125. In the absence of any evidence that Larsen's conduct connects her to Indiana in a meaningful way, the *Calder* effects test does not provide the means for the assertion of specific personal jurisdiction over Larsen. *Philpot*, 2015 WL 4134038, at *2 (finding that the fact that the plaintiff felt the harm in Indiana was insufficient to assert specific jurisdiction over the defendant absent any conduct connecting the defendant to the forum in a meaningful way).

For all of these reasons, the Court does not have personal jurisdiction over Defendant Mabel Larsen (or Creative Scrap Designs and Mai Larsen Designs, which are trade names under which Larsen operates as a sole proprietor) for the claims brought by Want2Scrap in this action.

## B. Transfer of Venue

As an alternative to dismissal for lack of personal jurisdiction, Larsen moves for transfer of venue to the United States District Court for the Western District of Texas under 28 U.S.C. § 1404(a). Transfer under § 1404(a) requires that venue be proper in the transferor court. *See In re LimitNone, LLC*, 551 F.3d 572, 575 (7th Cir. 2008). Under 28 U.S.C. § 1391, venue is proper in

> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;

(2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or

(3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(a). Larsen does not reside in Indiana, a substantial part of the events giving rise to the claim did not occur in Indiana, and Larsen is not subject to the Court's personal jurisdiction. Accordingly, because venue is not proper in this district, transfer of venue under § 1404(a) is not available. *See Laux v. City of Dallas*, No. 3:15-CV-453, 2016 WL 825953, at *1-2 (N.D. Ind. Mar. 3, 2016) (citing *In Re LimitNone, LLC*, 551 F.3d at 575).

However, 28 U.S.C. § 1406(a) provides that a district court may transfer "a case laying venue in the wrong division or district" to a district in which it could have been brought "if it be in the interest of justice." 28 U.S.C. § 1406(a); *see Haldrup USA Corp. v. Kincaid Equip. Mfg., Inc.*, No. 1:15-CV-136, 2016 WL 4592195, at *8 (N.D. Ind. Sep. 1, 2016) (considering an alternative motion to transfer venue under § 1406(a) when venue was improper in the transferor court due to lack of personal jurisdiction); *Diversity Max, LLC v. Waller*, 1:14-CV-2066, 2016 WL 1270205, at *6 (S.D. Ind. Mar. 31, 2016) (holding that the court did not have personal jurisdiction over defendants but transferring the case to the United States District Court for the Southern District of Texas pursuant § 1406(a)); *Laux*, 2016 WL 825953, at *1-2 (considering transfer of venue under § 1406(a) when defendant moved for transfer of venue under § 1404(a) but venue was not proper in the transferor district). The transferring court need not have personal jurisdiction over the defendants in order to transfer venue. *Howard v. Rodgers*, No. 16-CV-158, 2017 WL 377951, at *2 (W.D. Wis. Jan. 26, 2017) (citing *Cote v. Wadel*, 796 F.2d 981, 985 (7th Cir. 1986) ("And under 1404(a) as under

1406(a), the transferring court need not have personal jurisdiction over the defendants.")); *Haldrup*, 2016 WL 4592195, at *8 (citing *Hapaniewski v. City of Chicago Heights*, 883 F.2d 576, 579 (7th Cir. 1989)).

"'In considering the 'interest of justice' to transfer a case, a district court may consider such things as the efficient administration of the court system and a forum closer to the action.'" *Haldrup*, 2016 WL 4592195, at *8 (quoting *Philpot v. Oak Ridge Boys Theater*, No. 1:14-CV-1357, 2016 WL 2997570, at *2 (S.D. Ind. May 24, 2016) (citation omitted); *Garcia v. LQ Props., Inc.*, No. 2:15-CV-440, 2016 WL 3384644, at *4 (N.D. Ind. June 20, 2016)). In this instance, the interests of justice dictate that the Court not dismiss the case for lack of personal jurisdiction but rather transfer the case to a court in which the case could properly have been brought. Currently pending in the United States District Court for the Western District of Texas is Larsen's copyright infringement cause of action against Want2Scrap based on the same Works. Larsen resides in the Western District of Texas, which is also where Larsen's conduct related to the claims in this case occurred. Want2Scrap does not argue that venue and jurisdiction of this lawsuit would be improper in the Western District of Texas. Accordingly, the Court orders that this case be transferred to the United States District Court for the Western District of Texas.

## CONCLUSION

Based on the foregoing, the Court hereby **GRANTS in part** and **DENIES in part** Defendants' Motion to Dismiss for Lack of Personal Jurisdiction; Alternative Motion to Transfer Pursuant to 28 U.S.C. § 1404(a) [DE 17], granting the alternative motion to transfer but granting transfer pursuant to 28 U.S.C. § 1406(a) and denying as moot the motion to dismiss.

Accordingly, the Court **TRANSFERS** this cause of action to the United States District Court for the Western District of Texas.

SO ORDERED this 9th day of April, 2018.

s/ Paul R. Cherry
MAGISTRATE JUDGE PAUL R. CHERRY
UNITED STATES DISTRICT COURT